**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x
GREAT LAKES INSURANCE SE            :        CIVIL ACTION NO. 1:19-CV-10656
IN ITS OWN RIGHT AND/OR AS          :
SUBROGEE OF PACIFIC GULF            :
SHIPPING CO.,                       :
                Plaintiff,    :
                                :
         v.        :        IN ADMIRALTY
                                :
AMERICAN STEAMSHIP OWNERS           :
MUTUAL PROTECTION AND               :
INDEMNITY ASSOCIATION INC.          :
A/K/A THE AMERICAN CLUB,            :
SHIPOWNERS CLAIMS BUREAU INC.,      :
GEORGE GOURDOMICHALIS, AND          :
EFSTATHIOS GOURDOMICHALIS,          :
                                :
         Defendants.   :
                                :
-------------------------------------------------------x

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS GEORGEAND EFSTAHTIOS GOURDOMICHALIS'**
**MOTION TO DISMISS THE COMPLAINT**

Chalos & Co, P.C.
Attorneys for Plaintiff
GREAT LAKES INSURANCE SE
55 Hamilton Avenue
Oyster Bay, New York 11771
Tel: 516-714-4300

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

PROCEDURAL HISTORY ......................................................................................3

ARGUMENT...........................................................................................................4

    I.    STANDARD OF REVIEW ...........................................................................4

    II.    THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THE ACTION..........4

    III.    THIS COURT HAS PERSONAL JURISDICTION OVER GEORGE AND EFSTATHIOS
        GOURDOMICHALIS .................................................................................8

        a.    Statutory Authority ................................................................................9

            i.    C.P.L.R. § 301…………………………………………………………..9

            ii.    C.P.L.R. § 302…………………………………………………………..12

        b.    Constitutional Authority ......................................................................17

            i.    Defendants have Minimum Contacts with New York...........................18

            ii.    Defendants should have Reasonably Expected Suit in New York ........18

            iii.    There is No Burden on Defendants ......................................................19

            iv.    Plaintiff's Interest in Obtaining Relief is Strong..................................19

    IV.    THE COMPLAINT WAS SERVED PERSONALLY AND APPROPRIATELY UNDER
        THE HAGUE CONVENTION .................................................................20

    V.    PLAINTIFF'S COMPLAINT PROPERLY ALLEGES FIVE (5) CAUSES OF ACTION
        AGAISNT GEORGE AND EFSTATHIOS GOURDOMICHALIS ...............................23

        a.    Great Lakes' Cause of Action for Prima Facie Tort is Plead with Particularity,
            is Ripe As a Matter of Law, and is Not Precluded By the Applicable Statute of
            Limitations............................................................................................23

        b.    Great Lakes' Stated a Claim for Promissory Fraud......................................25

        c.    Great Lakes' Claim for Civil Conspiracy is Valid .........................................27

        d.    Plaintiff has Alleged Sufficient Grounds to Support its Claim
            for Unjust Enrichment and the Claim is Not Time-Barred. ..........................29

        e.    Plaintiff has Sufficiently Pled a Cause of Action for Negligence
            and the Statute of Limitations is Not Applicable. .........................................30

        f.    Plaintiff's Causes of Action for Unjust Enrichment and Negligence
            are Not Time Barred. ...........................................................................31

    VI.    PLAINTIFF DID NOT VIOLATE THE OREGON PROTECTIVE ORDER .................33

VII.   DISCOVERY IS WARRANTED UNDER THE CIRCUMSTANCES OF THIS
       MATTER. ...................................................................................................................33

VIII.  PLAINTIFF SEEKS LEAVE TO AMEND IF THE COURT FINDS THE COMPLAINT
       DEFICIENT IN ANY WAY. ..........................................................................................34

IX.    LIMITED DISCOVERY SHOULD BE GRANTED IF THE COURT FINDS
       PERSONAL JURISDICTION HAS NOT BEEN SATISFIED. .......................................34

CONCLUSION……………………………………………………...………………………35

# **TABLE OF AUTHORITIES**

## Cases

*A.I. Trade Fin. v. Petra Bank*, 989 F.2d 76, 83 (2d Cir. 1993) ......................................................18

*Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 645 N.E.2d 888, 894, 206 Ill. Dec. 636 (1994)...........28

*Alexander & Alexander v. Donald F. Muldoon & Co.*, 685 F. Supp. 346 (S.D.N.Y. 1988)...........9

*Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40 (2d Cir. 1991) ......................................................4

*Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102 (1987).......................................18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................................4

*Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672 (D.C. Cir. 2009) ..................4

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194 (2d Cir. 1990)......................................9

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779 (2d Cir. 1999) ..............9

*Bassim v. Hassett*, 184 A.D.2d 908, 585 N.Y.S.2d 566 (App. Div. 3rd Dept. 1992)....................25

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................4, 23

*Bensusan Restaurant Corp. v. King*, 126 F.3d 25 (2d Cir. 1997) ..................................................16

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) ........................................................13

*Broadway & 67th St. Corp. v. City of New York*, 100 A.D.2d 478, 475 N.Y.S.2d 1, 6 (1st Dep't 1984) ..........................................................................................................................................24

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)...........................................................17, 18

*Burke v. Quick Lift, Inc.*, 464 F. Supp. 2d 150 (E.D.L.A. Nov. 16, 2006).......................................8

*Caballero Spanish Media, Inc. v. Betacom, Inc.*, 592 F. Supp. 1093 (S.D.N.Y. 1984) ...............13

*Centrifugal Force, Inc. v. Softnet Commun., Inc.*, 2009 U.S. Dist. LEXIS 37084 (S.D.N.Y. Apr. 17, 2009) ....................................................................................................................................13

*City of Almaty v. Ablyazov*, 278 F. Supp. 3d 776 (S.D.N.Y. Sept. 26, 2017)................................16

*City of Syracuse v. R.A.C. Holding, Inc.*, 258 A.D.2d 905, 685 N.Y.S.2d 381,381 (4th Dep't 1999) ........................................................................................................................................29

*Cohen v. Koenig*, 25 F.3d 1168 (2d Cir. 1994) .............................................................................26

*Conley v. Gibson*, 355 U.S. 41 (1957) ........................................................................4

*Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957 (2d Cir. 1987)............................25

*CutCo Industries, Inc. v. Naughton*, 806 F.2d 361 (2d Cir. 1986) ..................................9

*Di Benedetto v. Pan Am World Serv., Inc.*, 359 F.3d 627 (2d Cir. 2004) .....................30

*E. River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858 (1986)................................6

*Erickson v. Pardus*, 551 U.S. 89 (2007) .........................................................................4

*Fednav, Ltd. v. Isoramar, S.A.*, 925 F.2d 599 (2d Cir. 1991).........................................6

*Freihofer v. Hearst Corp.*, 65 N.Y.2d 143, 490 N.Y.S.2d 735, 480 N.E.2d 349 (1985)...............25

*Ginsberg v. Ginsberg*, 84 A.D.2d 573, 443 N.Y.S.2d 439 (1981)...................................25

*Globaltex Group, LTD., v. Trends Sportswear, LTD. et al*, No. 09-cv-235 (JBW), 2009 U.S. Dist. LEXIS 38302 (E.D.N.Y. May 4, 2009)...........................................................26

*Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 518 (2d Cir. 2001); *Grynberg v. Eni S.p.A.*, 2007 U.S. Dist. LEXIS 65787 (S.D.N.Y. Sept. 5, 2007) ....................................................31

*Goldstein v. Siegel*, 19 A.D.2d 489, 244 N.Y.S.2d 378 (App. Div. 1st Dept. 1963).....................28

*Greenwell v. Aztar Ind. Gaming Corp.*, 268 F.3d 486 (7th Cir. 2001)............................6

*Harris v. City of New York*, 186 F.3d 243 (2d Cir. 1999) ..............................................31

*Hartford Fire Ins. Co. v. Mitlof*, 123 F. Supp. 2d 762, 2000 U.S. Dist. LEXIS 18200, 2001 AMC 2135 (SDNY 2000) ...........................................................................................................2

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55 (2d Cir. 1985)............................9

*Int'l Shoe Co. v. Wash.*, 326 U.S. 310 (1945)................................................................17

*Jerome B. Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995) ................7

*Johnson v. Nyack Hosp.*, 891 F. Supp. 155 (S.D.N.Y. 1995).........................................24

*Kaye v. Grossman*, 202 F.3d 611 (2d Cir. 2000).............................................................29

*Keene Corp. v. United States*, 700 F.2d 836 (2d Cir. 1983)............................................6

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione, etc.*, 937 F.2d 44 (2d Cir. 1991)...............9

*Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 595 N.Y.S.2d 931, 612 N.E.2d 289 (1993).................24

*L-3 Communs. Corp. v. OSI Sys.*, 2004 U.S. Dist. LEXIS 165 (S.D.N.Y. Jan. 6, 2004)..............27

*Lancaster v. Town of E. Hampton*, 54 A.D.3d 906, 864 N.Y.S.2d 537 (App. Div. 2nd Dept.)......25

*LeBlanc v. Cleveland*, 198 F.3d 353 (2d Cir. 1999)........................................................................6

*Luciano v. Handcock*, 78 A.D.2d 943, 433 N.Y.S.2d 257 (1980)...................................................25

*Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899 (2d Cir. 1981)..............................................34

*Maritima Petroleo E Engenharia Ltda v. Ocean Rig 1 AS*, 78 F. Supp. 2d 162 (S.D.N.Y. 1999)...5

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996) ........8, 9, 17

*Montefusco v. Nassau County*, 39 F. Supp.2d 231 (E.D.N.Y. Mar. 11, 1999) ...............................24

*Myun-Uk Choi v. Tower Research Capital LLC*, 890 F.3d 60 (S.D.N.Y. Mar. 29, 2018)..............29

*New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065 (2d Cir. 1988) ..............................................32

*Newbro v. Freed*, 2004 U.S. Dist. LEXIS 5358 (S.D.N.Y. 2004)...................................................34

*Official Comm. of Unsecured Creditors of Lois/USA, Inc. v. Conseco Fin. Servicing Corp. (In re Lois/USA, Inc.)*, 264 B.R. 69 (Bankr. S.D.N.Y. 2001)...................................................................26

*Overseas Media, Inc. v. Skvortsov*, 407 F. Supp. 2d 563 (S.D.N.Y. Dec. 29, 2005) ...................12

*Panama R. Co. v. Napier Shipping Co.*, 166 U.S. 280 (1897) ..........................................................7

*Pandeosingh v. Am. Med. Response, Inc.*, 2012 U.S. Dist. LEXIS 19187 (E.D.N.Y. Feb. 15, 2012) ...............................................................................................................................................34

*Peralta Shipping Corp. v. Smith & Johnson (Shipping) Corp.*, 739 F.2d 798 (2d Cir. 1984) .........5

*PKFinans Int'l Corp. v. IBJ Schroder Leasing Corp.*, 1996 U.S. Dist. LEXIS 9155 (S.D.N.Y. June 26, 1996) ............................................................................................................................27

*Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502 (2d Cir. 1994) ...................................5, 8

*Ruso v. Morrison*, 695 F. Supp. 2d 33, 44 (S.D.N.Y. Feb. 4, 2020) ........................................31, 33

*Rutkin v. Reinfeld*, 229 F.2d 248 (2d Cir. 1956) ............................................................................27

*Sadowy v. Sony Corp. of America*, 496 F. Supp. 1071 (S.D.N.Y. 1980)........................................23

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ..........................................................................................5

*Schmidt v. Merchants Despatch Transp. Co.*, 270 N.Y. 287, 200 N.E. 824 (1936)......................24

*See Junk v. Aon Corp.*, 2007 U.S. Dist. LEXIS 89741 (S.D.N.Y. Nov. 30, 2007) .......................27

*Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129 (2d Cir. 1998)..................................................5

*Sirius Ins. Co. (UK) Ltd. v. Collins*, 16 F.3d 34 (2d Cir. 1994) ......................................................6

*Solomon v. City of New York*, 66 N.Y.2d 1026, 499 N.Y.S.2d 392, 489 N.E.2d 1294 (1985) .....30

*Sommer v. Kaufman*, 59 A.D.2d 843, 399 N.Y.S.2d 7 (1st Dep't 1977) .........................................24

*Stagl v. Delta Airlines*, 52 F.3d 463 (2d Cir. 1995)........................................................................30

*Suarez v. Underwood*, 103 Misc. 2d 445, 426 N.Y.S.2d 208 (Sup. Ct. 1980)...............................28

*The Plymouth*, 3 Wall. 20 (1866)......................................................................................................6

*Tooley v. Napolitano*, 556 F.3d 836 (D.C. Cir. 2009) ...............................................................4, 23

*Vasquez v. GMD Shipyard Corp.*, 582 F.3d 293 (2d Cir. 2009)......................................................6

*Vaughan v. Atkinson*, 369 U.S. 527 (1962) ....................................................................................33

*Vom Lehn v. Astor Art Galleries, Ltd.*, 86 Misc. 2d 1, 380 N.Y.S.2d 532 (Sup. Ct. 1976)............28

*Walbro Auto. Corp. v. Apple Rubber Prods.*, Inc., 1992 U.S. Dist. LEXIS 14158, 1992 WL
   251449 (S.D.N.Y. 1992) ...........................................................................................................13

*Winston & Strawn v. Dong Won Secs. Co.*, 2002 U.S. Dist. LEXIS 20952 (S.D.N.Y. 2002)........34

**Statutes**

28 U.S.C. § 1333(1).............................................................................................................................5

C.P.L.R. § 301.....................................................................................................................................9

C.P.L.R. § 302(a)(1)....................................................................................................................13, 16

C.P.L.R. § 302(a)(1)-(3)....................................................................................................................14

C.P.L.R. § 302(a)(2)..........................................................................................................................16

N.Y. C.P.L.R. § 214 ..........................................................................................................................31

**Rules**

Fed. R. Civ. P. 4(f)(1).......................................................................................................................19

Fed. R. Civ. P. 4(h)(2)......................................................................................................................19

Fed. R. Civ. P. 9(b) ..................................................................................................24

Fed. R. Civ. P. 14(c)(1) ..............................................................................................6

Fed. R. Civ. P. 15 ....................................................................................................34

**Other Authorities**

Blue Wall Shipping Ltd., *About*, http://www.bluewallshipping.com/about.php (last visited
    February 11, 2020) ..............................................................................................10

Hague Conference on Private International Law, *Convention on the Service Abroad of Judicial
    and Extrajudicial Documents in Civil or Commercial Matters*, Art. 1,
    https://www.hcch.net/en/instruments/conventions/ full-text/?cid=17 (last visited Feb. 10, 2020)
    ..........................................................................................................................21

Hague Conference on Private International Law, *Convention on the Service Abroad of Judicial
    and Extrajudicial Documents in Civil or Commercial Matters*, Art. 5,
    https://www.hcch.net/en/instruments/conventions /fulltext/?cid= 17 (last visited Feb. 10,
    2020). ...............................................................................................................22

LinkedIn, https://www.linkedin.com/in/drakoulis-gourdomichalis-24a2ba181 (last visited
    February 11, 2020) ..............................................................................................19

SEC, Press
    Release,https://www.sec.gov/Archives/edgar/data/1325159/000095014405013103/g99014
    exv99w1.htm (Dec. 16, 2005) (last visited Feb. 13, 2020) .........................................10

The American Club, A message from George Gourdomichalis, Chairman of the Board of
    Directors of the American Club, https://www.american-club.com/page/welcome-from-
    chairman (last visited Feb. 11, 2020) .....................................................................12

The American Club, *By-Laws*, https://www.american-club.com/page/by-laws (last visited Feb.
    14, 2020) ...........................................................................................................11

The American Club, *Corporate Governance Guidelines*, https://www.american-
    club.com/files/files/corporate_ governance_guidelines.pdf (last visited Fed. 14, 2020) ..........15

The American Club, *Currents*, Issue No. 41, October 2018,
    https://www.americanclub.com/files/files/currents_ 41.pdf (last visited February 11, 2020)...11

The American Club, *Currents*, Issue No. 42, Nov. 2005 https://www.american-
    club.com/files/files/currents_ 21.pdf (last visited February 11, 2020) ......................................11

The American Club, https://www.american-club.com/page/freight-demurrage-defense-insurance.
    (last visited Feb. 10, 2020.)..................................................................................8

The American Club, *Rules*, https://www.american-club.com/page/rules  (last visited Feb. 14, 2020) ................................................................................................................................... 19

The American Club, *Rules*, https://www.american-club.com/page/rules (last visited Feb. 14, 2020) ..................................................................................................................................... 7

The American Club, *Rules*, Section 3, https://www.american-club.com/page/rules (last visited Feb. 14, 2020) ................................................................................................................. 10

**COMES NOW**, Plaintiff Great Lakes Insurance SE in its Own Right and/or as Subrogee of Pacific Gulf Shipping Co. (hereinafter "Plaintiff" or "Great Lakes"), by and through undersigned counsel, hereby submits this Opposition to Defendants George Gourdomichalis and Efstathios Gourdomichalis' Motion to Dismiss the Complaint.  For the reasons more fully set forth below, the accompanying submissions from the record, and what may be added at oral argument, Defendants' Motion to Dismiss the Complaint should be denied in its entirety.

<u>**PRELIMINARY STATEMENT**</u>

Defendants George Gourdomichalis and Efstathios Gourdomichalis (hereinafter collectively "George and Efstathios Gourdomichalis") have been owners and operators of ships for decades.  Their history has been a repetitive cycle of defaults, breaches, and ultimate winding-up/abandonment of businesses to the detriment of innocent third-parties.  This case is no exception and arises as a result of their tortious, conspiratorial, and other misconduct to arrange for the abandonment of their vessel the M/V ADAMASTOS (hereinafter the "Vessel") in Brazil and their scheme to avoid paying damages; all of which being intended to harm Plaintiff at the benefit of all Defendants in this action. Their conduct caused significant damages to Plaintiff, as Great Lakes was inequitably left "holding the bag" for at least $18,500,000 in cargo damages.

The Vessel was chartered to Plaintiff's insured, Pacific Gulf Shipping Co. ("Pacific Gulf") and was loading a cargo of soyabeans destined for China when it was detained by Brazilian Port State authorities as a result of forty-two (42) deficiencies found onboard.  Rather than take the necessary steps to remediate the deficiencies and post security for claims arising from the incident, George and Efstathios Gourdomichalis made the egregious decision to ignore all obligations and literally "abandon ship."[1]   The tortious and fraudulent conduct perpetrated by Defendants is

---

[1] The crew was also abandoned in Brazil, yet The American Club/SCB paid for and arranged their repatriation.

ongoing and integrally connected to the State of New York as set forth in detail in the Complaint. DE 1.  As part of the scheme to avoid any liability, George and Efstathios Gourdomichalis organized, confederated, and/or conspired with Defendants American Steamship Owners Mutual Protection and Indemnity Association Inc. (hereinafter "The American Club") and Shipowners Claims Bureau Inc. (hereinafter "SCB") to cancel the protection and indemnity insurance ("P&I insurance")[2] coverage on the Vessel.  This scheme was accomplished by and through, *inter alia*, George and Efstathios Gourdomichalis utilizing one of their shell companies, Phoenix Shipping & Trading S.A. (hereinafter "Phoenix Shipping"), *i.e.* the technical and commercial manager of the Vessel, to unilaterally and untruthfully notify the Greek government that their management of the Vessel was cancelled.  It was not. This "cancellation notice" was passed to The American Club, who in turn, utilized it as a false pretext to cancel the applicable P&I insurance coverage for the Vessel.   This policy was arranged for and purchased by George and Efstathios Gourdomichalis through Phoenix Shipping and the Vessel was entered with The American Club (of which George Gourdomichalis was a member of the board of directors), along with all of the other vessels owned and operated by George and Efstathios Gourdomichalis. At all times, the damages at the heart of this dispute were properly covered claims and should have been paid.

Ultimately, the Defendants' tortious conduct led to damages of no less than $18,500,000. Far from earning George Gourdomichalis a suspension or expulsion from "the Club," and/or reprimand or a loss of position, the maneuvering and tortious conduct was lauded by the organizational defendants, and earned him the prestige of appointment as Chairman of the Board

---

[2] Protection and indemnity (P&I) liability insurance is specifically designed to address the unique needs of the marine industry. It covers practically all maritime liability risks associated with the ownership and operation of a vessel, including third-party risks for damage caused to cargo during transit, risks of environmental damage such as oil spills and pollution, war, and political risks. *Hartford Fire Ins. Co. v. Mitlof*, 123 F. Supp. 2d 762 (S.D.N.Y. Dec. 15, 2000).

of Directors.   DE 1, at ¶ 57. Similarly, internal promotions at the Club also followed.  *See* DE 1, at ¶¶ 75, 79.

The Court has personal jurisdiction over the George and Efstathios Gourdomichalis as a result of their frequent and purposeful contacts with New York – contacts that relate directly to the claims being asserted in this action.  George and Efstathios Gourdomichalis are not entitled to any of the relief they seek, and the Court should deny the motion to dismiss.  Alternatively, at a minimum, the Court should decline to rule on the motion until Plaintiff is afforded an opportunity to conduct limited jurisdictional discovery to further develop the factual record on this issue.

## PROCEDURAL HISTORY[3]

Plaintiff commenced this action on November 18, 2019 against The American Club, SCB, George Gourdomichalis, and Efstathios Gourdomichalis (hereinafter collectively "Defendants"), seeking damages for the intentional and tortious misconduct by the Defendants in which the Defendants developed a conspiracy and scheme to fraudulently and wrongfully abandon the Vessel, to *inter alia*, avoid all contractual and insurance covered liabilities and obligations.  *See* DE 1.   Plaintiff has articulated five (5) causes of action against Defendants for *prima facie* tort, promissory estoppel, civil conspiracy, unjust enrichment, and negligence to recover damages in the amount of no less than $18,500,000, plus applicable interest, costs, and fees.  *Id*.

On December 13, 2019, George Gourdomichalis and Efstathios Gourdomichalis, were personally served with the Summons and Complaint through the Court Bailiff of the Athens Court of Appeal.  *See* Affidavit of Service, DE 46-47.   On January 17, 2020, George and Efstathios Gourdomichalis filed a joint Notice of Motion to Dismiss the Complaint and Memorandum in Support.  *See* DE 31-32.   Plaintiff's letter-motion for an extension of time to

---

[3] Plaintiff incorporates by reference the statement of facts set forth in its opposition to Defendants The American Club and SCB's motion to dismiss.  *See* DE 33, Statement of Facts.

respond to the motion to dismiss was granted January 20, 2020.  *See* DE 35.  This opposition

now follows.

## ARGUMENT

### I.   STANDARD OF REVIEW

The standard of review for a Rule 12(b)(6) motion to dismiss is well-settled.  The district

court must accept plaintiff's well-pleaded factual allegations in the complaint as true and construe

all reasonable inferences in plaintiff's favor.  *Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40 (2d

Cir. 1991). The Federal Rules of Civil Procedure only require that a complaint contain, "'a short

and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord*

*Erickson v. Pardus*, 551 U.S. 89 (2007) (*per curiam*).  To survive a motion to dismiss, a complaint

must contain sufficient factual matters, accepted as true, to 'state a claim to relief that is plausible

on its face.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A

complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129

S. Ct. at 1949.  "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all

of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

(citations omitted). "So long as the pleadings suggest a 'plausible' scenario to 'sho[w] that the

pleader is entitled to relief,' ***a court may not dismiss***." *Tooley v. Napolitano*, 556 F.3d 836, 839

(D.C. Cir. 2009) (quoting *Twombly*, 550 U.S. at 557) (emphasis added).

## II.     THIS COURT HAS SUBJECT MATTER JURISDICTION

This Honorable Court has subject matter jurisdiction over Plaintiff's claims.  "When considering a motion to dismiss for lack of subject matter jurisdiction . . . a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (*citing Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  When a pleading is challenged for lack of subject matter jurisdiction, "the plaintiff need only make a *prima facie* showing of [subject matter] jurisdiction."  *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).  The U.S. Constitution extends the judicial power "to all cases of admiralty and maritime jurisdiction."  U.S. Const. art. III, § 2.  Congress has codified this judicial power under 28 U.S.C. § 1333 and gives district courts "original jurisdiction . . . of . . . any civil case of admiralty or maritime jurisdiction."  28 U.S.C. § 1333(1).

Defendants George and Efstathios Gourdomichalis mischaracterize and conflate the test for admiralty contract and tort jurisdiction and attempt to assign a "non-maritime nature" label to Plaintiff's claims.  *See* DE 32.  Defendants argue that Plaintiff's claims do not arise under federal admiralty jurisdiction and incorrectly rely upon *Maritima Petroleo E Engenharia Ltda v. Ocean Rig 1 AS*, 78 F. Supp. 2d 162 (S.D.N.Y. 1999) (Scheindlin, J.).  *See* DE 32.  However, that case is distinguishable and inapplicable to the present matter.  *Maritima Petroleo E Engenharia Ltda*, was a contract case involving a memorandum of agreement to procure a contract for oil rigs with third parties.  78 F. Supp. at 164.  Judge Scheindlin held that the maritime obligations under the agreement, *i.e.*, the furnishing of rigs, was incidental to the obligation to procure contracts; and therefore, the court did not have admiralty jurisdiction under the preliminary contract doctrine.  *Id*. at 170-71; *see also Peralta Shipping Corp. v. Smith & Johnson (Shipping) Corp.*, 739 F.2d 798 (2d Cir. 1984), *cert. denied*, 470 U.S. 1031 (1985) (a contract which necessitates the need for a second

contract that will directly affect the vessel, the first contract is preliminary and not maritime). Here, Plaintiff's claims for *prima facie* tort, promissory fraud, civil conspiracy, unjust enrichment, and negligence properly invoke the Court's admiralty tort jurisdiction, an unrelated case about contract jurisdiction is inapplicable. *See* DE 1; *see also Sirius Ins. Co. (UK) Ltd. v. Collins*, 16 F.3d 34, 37 (2d Cir. 1994) ("Admiralty tort jurisdiction is determined quite differently from admiralty contract jurisdiction.").[4]

Plaintiff's complaint easily meets the pleading requirements of the Federal Rules and accurately asserts that this action "involves an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure." *See* DE 1, ¶4; *See also* Fed. R. Civ. P. 14(c)(1). "The primary purpose of federal admiralty jurisdiction is to 'protect [] commercial shipping' with uniform rules of conduct." *Vasquez v. GMD Shipyard Corp.*, 582 F.3d 293,298 (2d Cir. 2009) (*citing LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999)); *see also Greenwell v. Aztar Ind. Gaming Corp.*, 268 F.3d 486, 493-94 (7th Cir. 2001) ("The purpose is to enable the plaintiff to notify his opponent and the court that he's invoking those rules, when, having another basis for federal jurisdiction, he could just rely on the ordinary civil rules.").

The Second Circuit has fashioned a two (2) part test to determine whether a claims qualifies as a maritime tort as follows: (1) the wrong must take place on navigable waters (the "situs"); and (2) the wrong must bear a "significant relationship to traditional maritime activity ("status")." *Keene Corp. v. United States*, 700 F.2d 836 (2d Cir. 1983). To satisfy the first part of the two-part test, the Court must find that the wrong occurred on the high seas or navigable waters." *E. River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 863-864, (1986) (citing *The Plymouth*, 3 Wall.

---

[4] Notwithstanding, even if the Court did look to the underlying contracts as some inference as to whether admiralty jurisdiction can/should be invoked, there is no dispute that charter party agreements and marine insurance contracts are maritime contracts. *See*, *e.g.*, *Fednav, Ltd. v. Isoramar, S.A.*, 925 F.2d 599, 601 (2d Cir. 1991).

20, 35-36 (1866)).  To satisfy the second part of the test, "a court must assess the general features of the type of incident involved, to determine whether the incident has a potentially disruptive impact on maritime commerce. Second, a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Jerome B. Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). Plaintiff has satisfied both parts to invoke admiralty jurisdiction.

The M/V ADAMASTOS was a 39,017 gross ton dry bulk vessel doing business on the high seas; was docked in Brazil to receive cargo at the time of the incident; and was insured in New York.  DE 1, ¶ 29.[5]  The facts giving rise to this action occurred on navigable waters and/or was caused by a vessel on the navigable water. *Id.*; *see also Panama R. Co. v. Napier Shipping Co.*, 166 U.S. 280, 285 (1897) ("[T]he law is entirely well settled ... that torts originating within the waters of a foreign power may be the subject of a suit in a domestic court."). Therefore, Plaintiff satisfies the first prong of the test.

As for the second factor, maritime commerce was clearly impacted by the Defendants' (mis)conduct.  The incident made the basis of the lawsuit, arises as a result of the Vessel interest breaching the contract of carriage, and ultimately Defendants' conspiratorial and tortious conduct to arrange for the abandonment of the ship and self-serving cancellation of the Vessel's P&I insurance. Defendants' actions caused significant damages all of which touch upon maritime commerce, including but not limited to: (1) the breach of the charter party agreement between Pacific Gulf and Adamastos Shipping; (2) breaches of Pacific Gulf's sub-charter party agreement; (3) the damage and loss of the Vessel's perishable soyabean cargo; and (4) damages to Plaintiff as

---

[5] The American Club's rules subject each and every contract of insurance to U.S. law and a New York forum selection clause.  *See* The American Club, *Rules*, https://www.american-club.com/page/rules (last visited Feb. 14, 2020).

the marine insurer ultimately required to cover the losses associated with the cargo damage following Defendants torts.

Defendants' conduct is clearly related to traditional maritime activity. George and Efstathios Gourdomichalis and the organizational defendants were aware of the incident in Brazil and claims files were opened for both FD&D[6] and P&I insurance claims.  DE 1, ¶¶ 74-77.  The wrongful decision to abandon the Vessel, was made by Defendants while the Vessel was on navigable waters, engaged in traditional maritime activity, and subject to both the charter party governing the voyage and marine insurance contracts which were covering the Vessel.  *See Burke v. Quick Lift, Inc.*, 464 F. Supp. 2d 150, 155 (E.D.L.A. Nov. 16, 2006) (finding that "here, for the purposes of the jurisdictional inquiry, the tort 'occurred' on navigable waters because the negligence 'took effect' while the Burkes' vessel was docked at a port on navigable waters, even though the negligent act itself – the installation of the davit – took place elsewhere.").  Accordingly, Plaintiff has easily met the second part of the test.

This Court has subject matter jurisdiction over Plaintiff's claims for *prima facie* tort, promissory fraud, civil conspiracy, unjust enrichment, and negligence as the claims arise from activity that took place on the navigable waters beginning in August 2014. In addition, Defendants' conduct had a substantial impact on maritime commerce leading to nearly $20 million in damages.

## III.   THIS COURT HAS PERSONAL JURISDICTION OVER GEORGE AND EFSTATHIOS GOURDOMICHALIS

This Court has both statutory and constitutional authority to exercise personal jurisdiction over George and Efstathios Gourdomichalis. *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*,

---

[6] FD&D or Freight, Demurrage & Defense coverage provides members with cover for claims handling assistance and for legal costs in relation to a wide range of disputes. Such disputes are outside the scope of P&I insurance and arise from the building, buying, selling, owning or operation of an entered vessel. *See*, The American Club, https://www.american-club.com/page/freight-demurrage-defense-insurance. (last visited Feb. 10, 2020).

84 F.3d 560, 566 (2d Cir. 1996) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)).  District courts must engage in a two (2) part analysis to determine whether the court has personal jurisdiction. First, the court must first determine whether there is jurisdiction under state law.  *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). Second, district courts must determine if the exercise of jurisdiction comports with constitutional due process requirements. *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).[7]

### a.  Statutory Authority

In admiralty and maritime actions, the law of the forum state "governs the issue of personal jurisdiction.  *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione, etc.*, 937 F.2d 44, 50 (2d Cir. 1991).  Plaintiff has asserted admiralty jurisdiction in this matter under Rule 9(h); and therefore, New York law applies.  *Id*.  Personal jurisdiction over George and Efstathios Gourdomichalis is satisfied under the New York Civil Practice Law & Rules ("C.P.L.R.") §§ 301 and 302.

### i.  *C.P.L.R. § 301*

Under C.P.L.R. § 301,  "a court may exercise jurisdiction over persons, property, or status as might have been exercised hereto" and this section applies when a defendant "is engaged in such a continuous and systematic course of doing business in New York as to warrant a finding of its presence in the jurisdiction." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 198 (2d Cir. 1990) (internal citations omitted); *see also Hoffritz*, 763 F.2d 55, 58 ("A non-domiciliary may be served outside New York, and sued upon any cause of action, if it engages in a continuous and

---

[7] Plaintiff need only make a *prima facie* showing of personal jurisdiction by a preponderance of the evidence. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985); *see also Alexander & Alexander v. Donald F. Muldoon & Co.*, 685 F. Supp. 346, 352 (S.D.N.Y. 1988)."In the absence of an evidentiary hearing on the jurisdictional allegations, or a trial on the merits, all pleadings and affidavits are construed in the light most favorable to plaintiff, and where doubts exist, they are resolved in the plaintiff's favor." *Hoffritz*, 763 F.2d 55, 57; *see also CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986).

systematic course of doing business in New York.").  George and Efstathios Gourdomichalis are

engaged in "continuous and systematic" conduct in New York.  *Ball*, 902 F.2d at 198.  George and

Efstathios Gourdomichalis have regularly engaged in travel to and from New York.  George and

Efstathios Gourdomichalis both attended school in New York.  George Gourdomichalis earned an

"MSc in Ocean Marine Transportation Management from the Maritime Academy of the State of

New York" and remained within the state to work.[8]  Likewise, Efstathios Gourdomichalis earned

a "BSc in International Management and Finance" at New York University.[9]

George and Efstathios Gourdomichalis regularly travel to and from New York to conduct

business for and on behalf of themselves and the brass-plate companies they dominate and control,

including but not limited to Adamastos Shipping, Phoenix Shipping, Vigorous Shipping &

Trading, S.A., Fearless Shipping & Trading, S.A., and others.[10]  DE 1, ¶¶10-11.  George and

Efstathios Gourdomichalis are the only officers, directors, and employees for each of these

companies.  George and Efstathios Gourdomichalis arranged for the Vessel's P&I and FD&D

marine insurance to be entered with The American Club in New York.[11]  DE 1, ¶ 48.  The Club

Rules have a mandatory New York law and jurisdiction forum selection clause, as such, it was

reasonably foreseeable, and in fact expected, that any and all liability and coverage issues would

be resolved through litigation in New York City.[12]  Under The American Club's Rules, "[a]ll

---

[8] *See* Blue Wall Shipping Ltd., *About*, http://www.bluewallshipping.com/about.php (last visited February 11, 2020).

[9] *Id.*

[10] In fact, George and Efstathios Gourdomichalis have owned companies which they then took public and listed on the NASDAQ. SEC, Press Release, https://www.sec.gov/Archives/edgar/data/1325159_/000095014405013103/g99014_exv99w1.htm (Dec. 16, 2005) (last visited Feb. 13, 2020).

[11] In addition, George and Efstathios Gourdomichalis by and through Blue Wall and Phoenix Shipping hold P&I and FD&D marine insurance for the Blue Wall fleet of vessels.  DE 1, ¶¶ 132-134.

[12] *See* The American Club, *Rules*, Section 3, https://www.american-club.com/page/rules (last visited Feb. 14, 2020).

contracts of insurance effected by the Association shall be deemed to have been <u>issued in New York</u>."[13] George and Efstathios Gourdomichalis remained in constant and continuous contact with New York based representatives and attorneys based in New York and employed by The American Club during the months (and years) dealing with the M/V ADAMASTOS (and other vessels) through letters, notices, electronic communication, phone calls, and in person meetings.

In addition, as longstanding members of The American Club, George and Efstathios Gourdomichalis have regularly traveled to New York for business and social functions with the Club, its management, and others.   George Gourdomichalis has been a member of the Board of Directors for The American Club since <u>at least</u> 2005.[14]   As a member of the Board, George Gourdomichalis regularly travels to and from New York to conduct business, including but without limitation to, attendance at board meetings, voting on business related issues for the benefit of The American Club, participation in the election (and/or re-election) of board members, attending the annual general meeting ("held in the city of New York),[15] and various parties or other social functions hosted by The American Club.[16]   On June 21, 2018, George Gourdomichalis was elected the Chairman of the Board of Directors for The American Club.   DE 1, ¶ 57.   This new role as Chairman provides for constant and continuous contact New York state and with employees at The American Club and SCB in New York as well as other members of The American Club.   George

---

[13] *Id.*  (emphasis added).

[14] *See* The American Club, *Currents*, Issue No. 42, Nov. 2005 https://www.american-club.com/files/files/currents_21.pdf (last visited February 11, 2020). Currents provides is a publication issued by The American Club providing the public with updates on The American Club news, events, and industry information.  This issue of Currents provides that on June 16, 2005, George D. Gourdomichalis was elected as a member of The American Club Board of Directors.

[15] *See* The American Club, *By-Laws*, https://www.american-club.com/page/by-laws (last visited Feb. 14, 2020).

[16] *See* The American Club, *Currents*, Issue No. 41, October 2018, https://www.americanclub.com/files/files/currents_41.pdf (last visited February 11, 2020).

Gourdomichalis as Chairman of the Board of Directors is the 'face' of the Club and regularly conducts and solicits business for The American Club in New York and around the world to raise the profile of the Club and to attract potential members world-wide.[18]   George Gourdomichalis regularly issues statements as the Chairman of the Board of Directors, welcoming members and non-members to The American Club.[19]

After notifying The American Club of the incident in Brazil, George and Efstathios Gourdomichalis (for and on behalf of their offshore, brass-plate entities for which they serve as the only employees, directors, officers, and are the ultimate beneficial owners) kept in constant contact with New York based employees of The American Club and SCB.  DE 1, ¶¶ 74-75, 79-80.  In addition, George and Efstathios Gourdomichalis (for and on behalf of Adamastos Shipping and Phoenix Shipping) regularly traveled to and from New York and/or communicated with the New York based organizational defendants via email correspondence to discuss the incident in Brazil, insurance premiums, obligations of the assured and co-assured as a result of the incident, third party claims, general average claims, the abandonment of the Vessel, termination of management by Phoenix Shipping, and termination of coverage. DE 1, ¶¶ 80, 86, 91-93.   The factual allegations clearly show that George and Efstathios Gourdomichalis conduct constant, routine, and continuous business in New York. Accordingly, Plaintiff has made a *prima facie* showing by a preponderance of the evidence that exercise of personal jurisdiction over George and Efstathios Gourdomichalis is statutorily authorized pursuant to C.P.L.R. § 301.

---

[18] *Id.*

[19] *See* The American Club, A message from George Gourdomichalis, Chairman of the Board of Directors of the American Club, https://www.american-club.com/page/welcome-from-chairman (last visited Feb. 11, 2020).

ii.    *C.P.L.R. § 302*

In addition, the Court should also exercise personal jurisdiction over Defendants pursuant to specific jurisdiction found at C.P.L.R. § 302(a)(1), which states that a non-domiciliary can be subject to the personal jurisdiction of the Court when he "transacts business within the state or contracts anywhere to supply goods or services in the state." *Overseas Media, Inc. v. Skvortsov*, 407 F. Supp. 2d 563, 571 (S.D.N.Y. Dec. 29, 2005). "Section 302 provides that, a defendant may be sued in New York 'on a lesser showing of forum contacts [than necessary under the 'doing business' standard][20] if the cause of action arises from those contacts.'" *Overseas Media, Inc.*, 407 F. Supp. 2d at 571 (citing *Walbro Auto. Corp. v. Apple Rubber Prods.*, Inc., 1992 U.S. Dist. LEXIS 14158, 1992 WL 251449, at *4 (S.D.N.Y. 1992)).

"To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (*citing Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71, 850 N.E.2d 1140, 1142, 818 N.Y.S.2d 164, 166 (2006)).    Courts will look to the totality of the activities conducted by a defendant "to determine whether a defendant has 'transacted business' in such a way that it constitutes purposeful activity.'" *Best Van Lines, Inc.*, 490 F.3d at 246.   Under the first part of the test , "New York courts define 'transact[ing] business' as purposeful activity – 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id*. (internal citations

---

[20] To be subject to personal jurisdiction under Rule 302(a)(1), a nonresident individual does not have to be physically present to be "doing business" in New York. *See Caballero Spanish Media, Inc. v. Betacom, Inc.,* 592 F. Supp. 1093, 1095 (S.D.N.Y. 1984); *see also Centrifugal Force, Inc. v. Softnet Commun., Inc.*, 2009 U.S. Dist. LEXIS 37084, at *11 (S.D.N.Y. Apr. 17, 2009) ("Even if a defendant never enters New York, proof of one transaction in New York is sufficient to invoke jurisdiction, . . . so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.")

omitted).   Under the second part of the test, a claim arises from a transaction "when there is some 'articulable nexus between the business transacted and the cause of action sued upon,' or when 'there is a substantial relationship between the transaction and the claim asserted.'"  *Id*. at 249 (internal citations omitted).   Courts will look to both the statute and the "relation between the alleged conduct and the cause[s] of action*." Id*. at 246.

The case *Centrifugal Force, Inc. v. Softnet Commun., Inc.* is particularly instructive.   In that case, plaintiff Centrifugal Force, Inc. ("Centrifugal") filed suit against Softnet Communications ("Softnet") and Powerline Computers ("Powerline") for, *inter alia*, copyright infringement, trademark infringement, and unjust enrichment.   2009 U.S. Dist. LEXIS 37084, at *3-7.  Defendant Powerline was based in Poland and moved to dismiss the complaint for lack of personal jurisdiction.  *Id*. at *2.  Plaintiff Centrifugal argued that the court has personal jurisdiction over Powerline under C.P.L.R. § 302(a)(1)-(3) because of its five (5) year business relationship with Softnet and its communications with Softnet from Poland.  *Id*.  at *6.

The district court held that personal jurisdiction existed over Powerline under C.P.L.R. § 302(a)(1) even though Powerline never physically entered the state of New York because the company "had a substantial commercial relationship" with Softnet (a corporation registered in New York), regularly communicated with Softnet for five (5) years and spent thousands of hours developing software for Softnet.  *Id*. at *12.  The court denied the motion to dismiss and found that "PowerLine created a continuing relationship with a New York corporation. It voluntarily entered into a long-term business deal to engineer software for Softnet. It knew it would be required it to communicate regularly [by email] with a New York business, and that it would have to send material back and forth between Poland and New York."  *Id*. at *14.

Here, this Court has personal jurisdiction over George and Efstathios Gourdomichalis due to their constant and purposeful contact with New York, by and through their regular procurement of insurance (issued in New York) by and through The American Club and SCB for all of their owned and managed vessels, including the M/V ADAMASTOS and for all of their other vessels which are owned and operated through off-shore, tax-dodging brass plate companies which are dominated and controlled by George and Efstathios Gourdomichalis. DE 1, ¶¶ 34-38, ¶¶ 51-52, ¶133.  George and Efstathios Gourdomichalis, by and through their off-shore brass-plate, shell companies Adamastos Shipping and Phoenix Shipping, regularly furnished information to The American Club with regard to this incident and their conspiracy was with the New York-based The American Club and SCB to avoid paying for the damage they caused.  The American Club was established in New York in 1917, has an office at 1 Battery Park Plaza, 31st Floor, New York, NY 10004, is registered to do business in New York (and its registered agent SCB is located at the same address), and regularly conducts business within the District.[21]  The American Club's telephone number is 212-847-4500, *i.e.*, the quintessential New York city area code. George Gourdomichalis has been a member of The American Club's Board of Directors since at least 2005 and its Chairman since June 2018.  George and Efstathios Gourdomichalis regularly communicate with employees of The American Club, SCB and its employees and agents, and members of the Board via email correspondence, telephone, and in person meetings.

During the incident giving rise to Plaintiff's claims, George and Efstathios Gourdomichalis regularly communicated with The American Club's New York office about the incident, the claims against the Vessel, insurance premiums, and their conspiracy to cancel insurance coverage and abandon the Vessel.  Plaintiff's causes of action for *prima facie* tort, promissory fraud, civil

---

[21] *See* The American Club, *Corporate Governance Guidelines*, https://www.american-club.com/files/files/corporate_governance_guidelines.pdf (last visited Fed. 14, 2020).

conspiracy, unjust enrichment, and negligence stem from and have a substantial relationship with the business and agreements George and Efstathios Gourdomichalis and the organizational Defendants in New York.  Accordingly, Plaintiff has presented sufficient proof that exercise of personal jurisdiction is statutorily authorized under C.P.L.R. § 302(a)(1).

In addition, the Court has personal jurisdiction under C.P.L.R. § 302(a)(2) as Defendants committed a tortious act within the state.  C.P.L.R. § 302(a)(2); *see also Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997).  Accordingly, the Court has personal jurisdiction over George and Efstathios Gourdomichalis as their tortious act of conspiring to cancel the Vessel's insurance coverage and to abandon the Vessel took place within the State of New York via telephone and email.  Under the "conspiracy theory" of personal jurisdiction, New York courts have recognized jurisdiction under C.P.L.R. § 302(a)(2) where "the acts of a co-conspirator [are] attributed to a defendant for the purpose of obtaining personal jurisdiction over the defendant." *City of Almaty v. Ablyazov*, 278 F. Supp. 3d 776, 807 (S.D.N.Y. Sept. 26, 2017).  "To prove personal jurisdiction under a theory of conspiracy, a plaintiff must make a *prima facie* showing of a conspiracy and allege specific facts warranting the inference that the defendants were members of the conspiracy." *Id*. (internal citation omitted).

George and Efstathios Gourdomichalis conspired with The American Club and SCB to wrongfully avoid paying for the damages caused by abandoning the Vessel and nefariously cancelling the P&I insurance for the covered cargo claims.  As pled in the Complaint, Defendants devised a five-step scheme to abandon the Vessel.  First, George and Efstathios Gourdomichalis unilaterally and self-servingly notified the Greek government that Phoenix Shipping had ceased the technical and commercial management of the Vessel.  DE 1, ¶ 89. (There is no notice of termination to the Vessel's owner and/or any other contemporaneous communication terminating

the management agreement).  Second, George and Efstathios Gourdomichalis intentionally failed to provide notice of its termination of services to Adamastos Shipping and/or Pacific Gulf.  DE 1, ¶ 90.  Third, George and Efstathios Gourdomichalis provided notice to The American Club and SCB that Phoenix Shipping no longer managed the Vessel, which they knew (as the individuals who procured the insurance contract), would be utilized by The American Club and SCB as grounds to self-servingly cancel coverage.  DE 1, ¶ 91.  Fourth, The American Club and SCB issued a notice to Adamastos Shipping on January 8, 2015 that insurance coverage for the Vessel had been terminated (despite the very large pending claims).   DE 1, ¶ 92.  Finally, George Gourdomichalis, Efstathios Gourdomichalis, The American Club, and SCB walked away from the Vessel, her charterers, her cargo, the pending and future claims, and the crew.  Notably The American Club later paid for the repatriation of the crew in recognition of its obligations (but continued to refuse to pay other covered claims). Plaintiff has sufficiently alleged personal jurisdiction over George and Efstathios Gourdomichalis based on their role in the conspiracy and tortious acts committed occurred within the state of New York.

### b.  <u>Constitutional Authority</u>

In addition, the Court's exercise of personal jurisdiction comports with the due process clause.  Under the Due Process Clause of the United States Constitution, the exercise of personal jurisdiction must be based on the Defendants' "minimum contacts" and must also comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945); . The due process analysis has two (2) components: (1) the minimum contacts inquiry; and (2) the reasonableness inquiry.  *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).  "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King Corp.*, 471 U.S. 462, 474 (1985).

Minimum contacts with the forum state are established where the defendant's "conduct and connection with the forum State are such that he should be reasonably anticipated being haled into court." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (internal citation omitted).  In determining whether the exercise of personal jurisdiction is reasonable, courts will look to several factors, including: "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *A.I. Trade Fin. v. Petra Bank*, 989 F.2d 76, 83 (2d Cir. 1993) *(citing Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113, 107 S. Ct. 1026 (1987)).

      i.     *Defendants have Minimum Contacts with New York*

Plaintiff has established the requisite "minimum contacts" by George and Efstathios Gourdomichalis with the state of New York.   George and Efstathios Gourdomichalis regularly travel to and from New York to conduct business for and on behalf of their dominated and controlled shipping companies, which includes, Adamastos Shipping, Phoenix Shipping, and Blue Wall. George and Efstathios Gourdomichalis constantly communicate with The American Club, SCB, and others in person, by e-mail, and letter regarding the incident in Brazil.  In addition, George Gourdomichalis regularly travels to and from New York as a member and Chairman of the Board of Directors for The American Club to conduct board meetings, make business decisions for the future of The American Club, to vote, and to attend professional meetings and social gatherings as a representative of The American Club.

      ii.    *Defendants should have Reasonably Expected Suit in New York*

Through George and Efstathios Gourdomichalis' constant and continuous contacts with businesses in New York, it is reasonable for the Court to exert personal jurisdiction.  Where a plaintiff makes the threshold showing of the minimum contacts required for the first test, a defendant must present "a compelling case that the presence of some other considerations would

render jurisdiction unreasonable." *Metro. Life*, 84 F.3d at 568 (quoting *Burger King*, 471 U.S. at 477); *see also* DE 32. Defendants' motion omits this second prong and Defendants have presented <u>no</u> compelling case or considerations that would potentially render jurisdiction unreasonable. Defendants should have known that claims arising from their wrongful acts and abandonment of the Vessel would be filed (and in-fact have been filed).  Furthermore, George and Efstathios Gourdomichalis should have reasonably expected suit in New York because under The American Club's Rules, all contracts for insurance are issued in New York and any "differences or disputes" arising from the contracts for insurance be heard in New York.[22]    George and Efstathios Gourdomichalis agreed to <u>all</u> rules, by-laws, and terms and conditions when they contracted with The American Club and SCB; and therefore, reasonably expected suite in New York.

### iii.    There is No Burden on Defendants

There is no significant burden on George and Efstathios Gourdomichalis as both regularly travel to New York for personal reasons[23] and for business transactions on behalf of their brass-plate shell companies, and on behalf of The American Club.  It is within the interest of this Honorable Court to exercise jurisdiction over George and Efstathios Gourdomichalis to hold them responsible for their intentional torts and misconduct in this case.  No other forum has a greater interest in adjudicating this action as a result of the actions by all Defendants within the forum and Plaintiff has a strong interest in obtaining relief for the injury caused by Defendants.  Defendants have left Plaintiff to pay for the cargo claim damages resulting from Defendants abandonment of the Vessel and conspiracy to cancel the Vessel's.  Due process requirements have been met and the

---

[22] *See* The American Club, *Rules*, https://www.american-club.com/page/rules  (last visited Feb. 14, 2020).

[23] George Gourdomichalis' son (and Efstathios Gourdomichalis' nephew), Drakoulis Gourdomichalis, is a student at State University of New York (S.U.N.Y.) Maritime College. *See* LinkedIn, https://www.linkedin.com/in/drakoulis-gourdomichalis-24a2ba181 (last visited February 11, 2020).

exercise of personal jurisdiction over George and Efstathios Gourdomichalis is warranted. Accordingly, Defendants' motion should be denied in its entirety.

     *iv.*     *Plaintiff's Interest in Obtaining Relief is Strong*

     Finally, any concerns about the fairness of the forum for George and Efstathios Gourdomichalis is greatly outweighed by the Plaintiff's interest in a forum for recourse. Defendants' self-servingly created brass plate companies in tax-dodging, debtor friendly jurisdictions such as Liberia where they have operated with impunity and no oversight.  New York is a proper jurisdiction based on the numerous facts above demonstrating the ongoing and consistent business conducted by George and Efstathios Gourdomichalis; the organizational Defendants' physical presence in New York City; the issuance of marine insurance policy at issue in New York City; and the forum selection clause and without the Court exerting personal jurisdiction over the Defendants, Plaintiff will be left without a remedy.

## IV.    THE COMPLAINT WAS SERVED PERSONALLY AND APPROPRIATELY UNDER THE HAGUE CONVENTION

     Plaintiff properly served Defendants George and Efstathios Gourdomichalis under the Hague Convention in Greece.  Fed. R. Civ. P. 4(h)(2) governs service of the summons and complaint in a civil action.  Fed. R. Civ. P. 4(h)(2) provides that service on a party "not within any judicial district of the United States" may be made "in any manner prescribed by Rule 4(f)."  Fed. R. Civ. P. 4(h)(2).  Under Fed. R. Civ. P. 4(f), service of process on an individual who lives abroad may be completed "by any internationally agreed upon means reasonably calculated to give notice, such as those authorized by the Hague Convention." Fed. R. Civ. P. 4(f)(1).  "Once a defendant challenges the sufficiency of service of process, 'the burden of proof is on the plaintiff to show the adequacy of service.'" *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 658 (S.D.N.Y. 1997).  "Factual contentions regarding the manner in which service was executed may

be made through affidavits, depositions and oral testimony." *Trovarello v. McMonagle*, No. 97-7369, 1998 U.S. Dist. LEXIS 18529, at *4 (E.D. Pa. Nov. 16, 1998).

Plaintiff's service of process exceeded the requirements under the law.  The United States and Greece are signatories to the Hague Convention.  *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705, 108 S. Ct. 2104 (1988).  Article 1 provides that the Hague Convention "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad."[24]  Under Article 10, a party may effect service through local methods provided that the "state of destination does not object."[25]

On December 13, 2019, Plaintiff properly served George and Efstathios Gourdomichalis with the summons and complaint through the Court Bailiff of the Athens Court of Appeal with certified translations in Greek. *See* DE 46-47.  Service was accepted by Petroula Nikoloulia, an employee of Phoenix Shipping.   Defendants' assertion that "Greece objects to service of process by mail" is incorrect. *See* DE 32.   Article 21 of the Hague Convention,  provides an opt out procedure for signatories to the Hague Convention, stating: "each contracting State shall, at the time of the deposit of its instrument of ratification or accession, or at a later date, inform the Ministry of Foreign Affairs of the Netherlands of the following … opposition to the use of methods of transmission pursuant to articles 8 and 10 …." *Id*.   In this case, there is no evidence that Greece has objected to service of process via mail, and thus service by mail is not an invalid method of transmission under the treaty. *See Lafarge Corp. v. M/V Maced. Hellas*, No. 99-2628, 2000 U.S. Dist. LEXIS 22437, at *32-37 (E.D. La. May 25, 2000) (The Court acknowledged the circuit court

---

[24] *See* Hague Conference on Private International Law, *Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, Art. 1,   https://www.hcch.net/en/instruments/conventions/_full-text/?cid=17 (last visited Feb. 10, 2020).

[25] *Id*. at Art. 10.

split as to whether Article 10(a) permits service of process through the mail on a foreign defendant. The court held that "there is no evidence that Greece has objected to service of process via mail" and concluded that "the Hague Convention permits service of process by mail" in Greece); *Dominguez v. Pyrgia Shipping Corp.*, 1998 U.S. Dist. LEXIS 5988, 1998 WL 310777 (E.D. La. Apr. 24, 1998) (holding that Article 10 permits service of process by mail).  In any event, service was completed personally in the manner and means with which service is routinely effected domestically in Greece.

Not only did Plaintiff properly execute service on George and Efstathios Gourdomichalis through the Court Bailiff, Plaintiff has also commenced service over George and Efstathios Gourdomichalis by mailing the Complaint, Summons, and Translations to the Greek Central Authority on or about December 20, 2019.[26]  Accordingly, Defendants' challenge to the sufficiency of the service is without merit and not a basis for dismissal of the present action.

Finally, the translations provided to George and Efstathios Gourdomichalis were *more than sufficient* under the Hague Convention. Article 5, paragraph 3 of the Hague Convention, states that court pleadings (or other documents) are required to be translated into the official language of the foreign country.[28]  Plaintiff obtained translations of the summons and complaint from a certified translator in Greece.  Defendants' assertion that the copies were "poorly translated" does not pass the "red-face test." *See* DE 32.  Service and translation of the pleadings gave George and Efstathios

---

[26] Defendants should not be allowed to imply that Plaintiff improperly served George and Efstathios Gourdomichalis because the docket does not provide an affidavit of service from the Central Authority. *See* Affidavit of Personal Service at DE 46.[26]  It is well-settled that service through the Hague Convention may take several months to complete. *See In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262 (S.D.N.Y. Nov. 9, 2012) (Magistrate Judge expressing concern that "the length of time required for service under the Hague Convention [is] approximately six to eight months.").

[28] *See* Hague Conference on Private International Law, *Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, Art. 5,  https://www.hcch.net/en/instruments/conventions /fulltext/?cid= 17 (last visited Feb. 10, 2020).

Gourdomichalis actual notice of the proceedings against them in the District.  *See Milliken v. Meyer*, 311 U.S. 457, 463 (1940) (when service "reasonably calculated to give [] [a party] actual notice of the proceedings and an opportunity to be heard . . . the traditional notion of fair play and substantial justice implicit in due process are satisfied") (internal citations omitted).  George and Efstathios Gourdomichalis read, write, and speak English fluently.  Both attended and earned degrees from prestigious colleges and universities in New York City.  At the December 2018 depositions, both George and Efstathios Gourdomichalis testified in English without use of a translator.  The official language of their vessels is English and all international business in the shipping industry is conducted in English.  In addition, the charter party and insurance contract for the M/V ADAMASTOS were both in English.  All messages, reports, and letters sent by and between George and Efstathios Gourdomichalis and the organizational Defendants are in English.  Service upon George and Efstathios Gourdomichalis provided actual notice of this action and is therefore proper.

## V.    PLAINTIFF'S COMPLAINT PROPERLY ALLEGES FIVE (5) CAUSES OF ACTION AGAISNT GEORGE AND EFSTATHIOS GOURDOMICHALIS

"So long as the pleadings suggest a 'plausible' scenario to 'sho[w] that the pleader is entitled to relief,' *a court may not dismiss*." *Tooley v. Napolitano*, 556 F.3d at 839 (quoting *Twombly*, 550 U.S. at 557) (emphasis added).  Plaintiff has satisfied the pleading requirements of the Federal Rules of Civil Procedure, and has set forth sufficient facts to support the five (5) plausible claims for entitlement to relief, taking Plaintiff's factual allegations as true, as this Honorable Court must do when evaluating a motion to dismiss. *See* DE 1.   Accordingly, Defendants' motion to dismiss must be denied in its entirety.

### a. **Great Lakes' Cause of Action for *Prima Facie* Tort is Plead with Particularity, is Ripe As a Matter of Law, and is Not Precluded By the Applicable Statute of Limitations**

Plaintiff has pled a valid *prima facie* tort claim against Defendants.  To state a cause of action for *prima facie* tort, a plaintiff must assert that defendant (1) intended to inflict harm;  (2) without excuse or justification and motivated solely by malice; (3) resulting in special damages; (4) by an act that would otherwise be lawful. *Sadowy v. Sony Corp. of America*, 496 F. Supp. 1071, 1074 (S.D.N.Y. July 14, 1980); *Sommer v. Kaufman*, 59 A.D.2d 843, 844, 399 N.Y.S.2d 7, 8 (1st Dep't 1977).  Defendants intended to inflict harm on Plaintiff and were motivated by malicious intent to cause detriment to the Plaintiff (and its insured) by avoiding their undisputed payment obligations.  The self-serving motivation by Defendants was to maliciously create an after-the-fact excuse to cancel the insurance coverage for the Vessel in a manner which was solely intended to harm the charterer Pacific Gulf, sub-charterers Integris and Marubeni, as well as the cargo owners and the charterers' interested underwriters, *i.e.*, Plaintiff Great Lakes.  As set forth in detail in the Complaint, the Defendants benefit themselves while at the same time, intend on inflicting harm on the  chartering and cargo interests which entered into a contractual relationship with the owner and operator of the M/V ADAMASTOS without legal or factual justification.  *See* DE 1, ¶¶ 15 – 140.

To successfully plead a cause of action in *prima facie* tort, Plaintiff's damages must be alleged 'fully and accurately . . . with sufficient particularity as to identify and causally relate the actual losses to the allegedly tortious acts.'" *Montefusco v. Nassau County*, 39 F. Supp.2d 231, 239 (E.D.N.Y. Mar. 11, 1999) (citing *Broadway & 67th St. Corp. v. City of New York*, 100 A.D.2d 478, 486, 475 N.Y.S.2d 1, 6 (1st Dep't 1984)).  There can be no dispute that the $18,500,000 in damages suffered by Plaintiff accrued directly as a result of Defendants'

wrongful and tortious conduct.

George and Efstathios Gourdomichalis argue that Plaintiff's *prima facie* tort claim is time barred.  *See* DE 32.  It is not.  It is a basic principle that a tort cause of action does not accrue until the last of the elements of the cause of action exists. *See Johnson v. Nyack Hosp.*, 891 F. Supp. 155, 166 (S.D.N.Y. June 27, 1995) (citing *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94, 595 N.Y.S.2d 931, 612 N.E.2d 289 (1993); *Schmidt v. Merchants Despatch Transp. Co.*, 270 N.Y. 287, 300, 200 N.E. 824 (1936)). *Prima facie* tort was designed to provide a remedy for intentional and malicious actions that cause harm to a plaintiff. *See Lancaster v. Town of E. Hampton*, 54 A.D.3d 906, 908, 864 N.Y.S.2d 537 (App. Div. 2nd Dept. 2008); *Bassim v. Hassett*, 184 A.D.2d 908, 910, 585 N.Y.S.2d 566 (App. Div. 3rd Dept. 1992).  It is well settled that, "[a] critical element of the cause of action is that plaintiff suffered specific and measurable loss, which requires an allegation of special damages." *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 143, 490 N.Y.S.2d 735, 480 N.E.2d 349 (1985).  Said another way, Plaintiff's claim could not accrue any earlier than May of 2018 (*i.e.* the date of the settlement between Intergis and Marubeni, *see* DE 1, ¶¶ 101-111) and was not discovered until January of 2019. *See* Point V. f., *infra*.  Before that date there was not a *known* and firm quantum of damages and the "damages must be alleged with sufficient particularity to identify actual losses and be related causally to the alleged tortious acts." (*Ginsberg v. Ginsberg*, 84 A.D.2d 573, 574, 443 N.Y.S.2d 439 (1981) (quoting *Luciano v. Handcock*, 78 A.D.2d 943, 944, 433 N.Y.S.2d 257 (1980).   Accordingly, Plaintiff's claim is ripe and not time-barred under the New York three (3) year standard statute of limitations for tort actions.[29]

---

[29] Defendants George and Efstathios Gourdomichalis are represented by the same firm, Blank Rome LLP, who represent the sham, shell companies Vigorous Shipping & Trading S.A. and Fearless Shipping & Trading S.A. in the District of Oregon and Southern District of Texas proceedings.  Amazingly, in those proceedings Defendants have taken the exact opposite position arguing that those district courts have no subject matter jurisdiction because the claim was not ripe and was nothing more than a contingent indemnity claim and therefore did not invoke the courts' admiralty jurisdiction.

### b.  **Great Lakes Has Stated a Claim for Promissory Fraud**

Plaintiff has sufficiently plead promissory fraud with particularity under Fed. R. Civ. P. 9(b). *See Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987).  To establish a promissory fraud cause of action, plaintiff must allege (1) that there was a material, false representation; (2) made with knowledge of its falsity; (3) an intent to defraud; (4) that plaintiff reasonably relied upon; (5) causing the plaintiff damages. *Globaltex Group, LTD., v. Trends Sportswear, LTD. et al*, No. 09-cv-235 (JBW), 2009 U.S. Dist. LEXIS 38302, at *15-16 (E.D.N.Y. May 4, 2009) (denying the motion to dismiss the claim of promissory fraud concluding that plaintiff provided adequate information as to the "business relationship between the parties, the goods provided to defendants by plaintiff, the amount purportedly owed, and other allegations informing the nature of the claims" sufficient to meet Rule 9(b) specificity requirements) (internal citation omitted).  Although pleading particularity is required, great specificity is not necessary because a plaintiff "cannot be expected to plead a defendant's actual state of mind." *Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994).  Allegations that a person or entity made a promise with a then-existing intention not to perform it are sufficient to support a cause of action in fraud under New York law. *Official Comm. of Unsecured Creditors of Lois/USA, Inc. v. Conseco Fin. Servicing Corp. (In re Lois/USA, Inc.)*, 264 B.R. 69, 114 (Bankr. S.D.N.Y. 2001).  Courts apply a liberal standard so long as there is a plausible basis to support the cause of action. *Id*.

Plaintiff has satisfied its burden by alleging that The American Club and SCB made statements by and through its insured Adamastos Shipping and Phoenix Shipping (by and through George and Efstathios Gourdomichalis) that the claim will be handled.  Once George and Efstathios Gourdomichalis notified The American Club and SCB of the incident in Brazil on August 12, 2014, the false representations made by all Defendants commenced.  DE 1, ¶74.  The

American Club opened two (2) claims files for FD&D claims and P&I claims. DE 1, ¶77. For six (6) months, George and Efstathios Gourdomichalis kept in constant communications with The American Club and SCB and relayed those communications to Pacific Gulf as to the status of insurance claims and the Vessel.

Defendants knew that the incident was above and beyond their deductible for P&I claims, knew that they would not pay any claims; and as a result, made false representations to Pacific Gulf that the issues would be rectified. DE 1, ¶78. Plaintiff and its insured relied upon those representations for six (6) months and held a good faith belief Defendants were working towards a resolution to rectify the deficiencies and settle the claims which were accruing in Brazil. It is clear from Defendants' actions (*e.g.*, *inter alia* - Phoenix Shipping's termination of management of the Vessel and the organizational Defendants termination of insurance coverage for the Vessel) that they had no plan to resolve and/or rectify the deficiencies or pay the claims. As a result, Plaintiff was left to deal with $18,500,000 in damages that were rightly the obligation of Defendants.

Plaintiff has specifically alleged that Defendants made false promises to Plaintiff that the incident in Brazil would be resolved and that Plaintiff reasonably relied on those representations. *See Junk v. Aon Corp.*, 2007 U.S. Dist. LEXIS 89741, at *22-26 (S.D.N.Y. Nov. 30, 2007) (denying the motion to dismiss the promissory fraud claim where the allegations in the complaint satisfy the liberal standard to survive dismissal and where plaintiff provided specific facts that "[d]efendants had no intention of actually following through with the statements made"); *L-3 Communs. Corp. v. OSI Sys.*, 2004 U.S. Dist. LEXIS 165 (S.D.N.Y. Jan. 6, 2004) (denying the motion to dismiss the fraud claim finding that the amended letter of intent reaffirmed the parties' obligation to negotiate in good faith); *PKFinans Int'l Corp. v. IBJ Schroder Leasing Corp.*, 1996 U.S. Dist. LEXIS 9155 (S.D.N.Y. June 26, 1996) (denying defendant's motion to dismiss plaintiff's common law fraud

claim and promissory fraud claim).  As Plaintiff has presented a valid claim of promissory fraud, it is just and proper for the Court to deny Defendants' motion in its entirety.

### c.  Great Lakes' Claim for Civil Conspiracy is Valid

Plaintiff's civil conspiracy claim against George and Efstathios Gourdomichalis is valid. A claim for civil conspiracy is "merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible . . . for any overt act or acts." *Rutkin v. Reinfeld*, 229 F.2d 248, 252 (2d Cir. 1956); *see also Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 645 N.E.2d 888, 894, 206 Ill. Dec. 636 (1994) ("The function of  a conspiracy claim is to extend liability in tort beyond the active wrongdoer to those who have merely planned, assisted or encouraged the wrongdoer's act."). Under New York law, a civil conspiracy is defined as:

> an agreement or confederation between two or more persons intentionally participating in the furtherance of a preconceived common plan or purpose to defraud. To constitute an actionable conspiracy, plaintiffs must establish not only the corrupt agreement between two or more persons, but their intentional participation in the furtherance of the plan or purpose, and resulting damage.

*Vom Lehn v. Astor Art Galleries, Ltd.*, 86 Misc. 2d 1, 7, 380 N.Y.S.2d 532, 538 (Sup. Ct. 1976) (citations omitted).

In alleging civil conspiracy, the plaintiff ultimately carries the burden of proving (1) the corrupt agreement between two (2) or more persons, (2) an overt act, (3) their intentional participation in the furtherance of a plan or purpose, and (4) the resulting damage." *Suarez v. Underwood*, 103 Misc. 2d 445, 447, 426 N.Y.S.2d 208, 210 (Sup. Ct. 1980).  However, at the time of pleading, "great latitude is allowed in setting out in the complaint the particular acts from which the conspiracy is to be inferred." *Id.* (quoting *Goldstein v. Siegel*, 19 A.D.2d 489, 493, 244 N.Y.S.2d 378 (App. Div. 1st Dept. 1963)).  The purpose of the civil conspiracy claim is not that it is a stand-alone cause of action, but is used to support Plaintiff's four (4) tort causes of action and ties

together the George and Efstathios Gourdomichalis (along with the organizational Defendants) for their improper actions.

George and Efstathios Gourdomichalis conclusory allegations are not sufficient to dismiss Plaintiff's civil conspiracy claim. Plaintiff has properly and sufficiently pled that Defendants conspired to abandon the Vessel in Brazil; to cancel the relevant insurance coverage retroactively; and refused to cover the claims. Phoenix Shipping, by and through George and Efstathios Gourdomichalis, unilaterally and self-servingly ceased its commercial and technical management of the Vessel even though there existed a significant covered P&I claim. Furthermore, The American Club and SCB purposefully cancelled the P&I coverage (retroactively) for the Vessel because of the existence of a significant covered claim to self-servingly avoid their payment obligation. Accordingly, Plaintiff has stated a valid cause of action for civil conspiracy and the motion to dismiss should be denied in its entirety.

### d. Plaintiff has Alleged Sufficient Grounds to Support its Claim for Unjust Enrichment

Plaintiff has alleged sufficient grounds against George and Efstathios Gourdomichalis as they have benefitted from the abandonment of the Vessel by continuing to do business without recourse. For unjust enrichment, a plaintiff must demonstrate "(1) that the defendant benefitted; (2) at the expense of the plaintiff; and (3) that 'equity and good conscience' require restitution." *Myun-Uk Choi v. Tower Research Capital LLC*, 890 F.3d 60, 69 (S.D.N.Y. Mar. 29, 2018) (citing *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)). The essence of an unjust enrichment claim "is that one party has received money or a benefit at the expense of another." *Kaye v. Grossman*,

202 F.3d 611, 616 (2d Cir. 2000) (citing *City of Syracuse v. R.A.C. Holding, Inc.*, 258 A.D.2d 905, 685 N.Y.S.2d 381,381 (4th Dep't 1999)).

Plaintiff's claim for unjust enrichment is not duplicative of its *prima facie* tort claim. For several years, George and Efstathios Gourdomichalis (directly and indirectly through off-shore, brass plate companies) have unjustly benefitted from their abandonment of the Vessel by retaining the benefit of not paying the Cargo Claim and retaining the opportunity of owning and managing vessels later without recourse. George and Efstathios Gourdomichalis have retained these benefits at the expense of (among others) Plaintiff and left Plaintiff to pay the $18,500,000. Equity and good conscience require restitution for the wrongful abandonment of obligations that were rightfully the sole responsibility of Defendants. Accordingly, Plaintiff has alleged a separate and distinct cause of action against George and Efstathios Gourdomichalis and the Court should deny the motion in its entirety.

### e.   Plaintiff has Sufficiently Pled a Cause of Action for Negligence

Plaintiff has sufficiently pled that George and Efstathios Gourdomichalis owe a duty to Great Lakes and Pacific Gulf and that they breached that duty. To state a cause of action negligence a plaintiff must prove that "(1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as a proximate result of that breach." *Stagl v. Delta Airlines*, 52 F.3d 463, 467 (2d Cir. 1995) *(citing Solomon v. City of New York*, 66 N.Y.2d 1026, 1027, 499 N.Y.S.2d 392, 392, 489 N.E.2d 1294 (1985)). The existence of a duty is a question of law for the district courts and the question of whether there was a breach of duty is a question to be determined by the jury (or the district court in bench trials). *See Di Benedetto v. Pan Am World Serv., Inc.*, 359 F.3d 627, 630 (2d Cir. 2004).

Here, George and Efstathios Gourdomichalis present the exact same argument that The American Club and SCB presented in their motion to dismiss (DE 20), *i.e.*, that Defendants do not owe a duty of care to Great Lakes. *See* DE 32, p. 40.  Their argument is unpersuasive. George and Efstathios Gourdomichalis had a duty to ensure that the Vessel was fit for its intended service and that she was properly insured.  Adamastos Shipping, by and through George and Efstathios Gourdomichalis, entered into a charter party agreement with Pacific Gulf for Pacific Gulf to charter the Vessel. DE 1, ¶ 58. As the beneficial owners of Adamastos Shipping, George and Efstathios Gourdomichalis are responsible for the Vessel.  DE 1, ¶ 30.  At all relevant times, Phoenix Shipping, by and through George and Efstathios Gourdomichalis, was the technical and commercial manager of the Vessel.  DE 1, ¶¶ 33-38.  Phoenix Shipping, as the technical and commercial manager, was and is responsible for the "operation, manning, victualing, and supply of the vessel."  DE 1, ¶ 39.  Accordingly, George and Efstathios Gourdomichalis owed various duties to Plaintiff as owners and managers of the Vessel; and therefore, Defendants' motion should be denied in its entirety.

### f.  Plaintiff's Causes of action for Unjust Enrichment and Negligence are not Time Barred

Plaintiff's claims for unjust enrichment and negligence are not time barred.  "[T]he survival of a Rule 12(b)(6) motion to dismiss on statute of limitations grounds requires only allegations consistent with a claim that would not be time-barred." *Harris v. City of New York*, 186 F.3d 243, 251 (2d Cir. 1999).  The statute of limitations period for unjust enrichment where a plaintiff seeks an equitable remedy is six (6) years but where a plaintiff seeks monetary damages is three (3) years.  *See Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 518 (2d Cir. 2001); *Grynberg v. Eni S.p.A.*, 2007 U.S. Dist. LEXIS 65787, at *8-9 (S.D.N.Y. Sept. 5, 2007).  Typically, a claim for negligence must be commenced within three (3) years.  *See* N.Y. C.P.L.R. § 214.

Courts in this circuit have allowed equitable tolling where a defendant "actively misled" or was prevented in some extraordinary way from exercising his rights. *Bodner v. Banque Paribas*, 114 F. Supp. 2d 117, 135 (E.D.N.Y. Aug. 31, 2000). Equitable tolling allows the statute of limitation to stop from running against a plaintiff who was "unaware of his cause of action." *Id.* (internal citation omitted). The clock begins to run when upon the occurrence of the wrongful act. *Golden Pac. Bancorp*, 273 F.3d at 519. "[A]ccrual occurs when the claim becomes enforceable, *i.e.*, when all elements of the tort can be truthfully alleged in a complaint." *Ruso v. Morrison*, 695 F. Supp. 2d 33, 44 (S.D.N.Y. Feb. 4, 2020). Equitable tolling was developed in the fraud context, but has been applied to actions alleging causes of action other than fraud "where the facts show that the defendant engaged in conduct, often itself fraudulent, that concealed from the plaintiff the existence of the cause of action." *Bodner,* 114 F. Supp. 2d at 135. A plaintiff can extend the statute of limitations by proving "(1) that the defendant concealed from him the existence of his cause of action, (2) that he remained in ignorance of that cause of action until some point [] [before] commencement of [this] action, and (3) that his continuing ignorance was not attributable to lack of diligence on his part." *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988).

Plaintiff's cause of actions for unjust enrichment and negligence were tolled, because Defendants concealed their fraudulent acts of wrongdoing, which Plaintiff was unable to discover until early 2019. George and Efstathios Gourdomichalis concealed their plan to avoid coverage on an inapplicable pretext beginning on or about January 7, 2015 when Phoenix Shipping (by and through George and Efstathios Gourdomichalis) submitted a letter to the Greek government ceasing its operation of the M/V ADAMASTOS without sending a similar notice to Adamastos Shipping <u>or</u> Pacific Gulf. DE 1, ¶¶ 89-90. George and Efstathios Gourdomichalis notified The American Club and SCB of its plan which led The American Club and SCB to issue their own

32

notice of termination of coverage and abandon their obligations as insurers of the Vessel.  DE 1, ¶ 92.  George and Efstathios Gourdomichalis did not provide notice to Pacific Gulf or Great Lakes that The American Club and SCB terminated coverage, which furthered the fraudulent scheme to abandon the Vessel.  Great Lakes only became aware of the actions of Defendants once a subpoena was issued on January 23, 2019 by U.S. District Judge Mosman in the United States District Court for the District of Oregon for The American Club and SCB to produce their claims files.  Without this subpoena request, and the diligence of Great Lake's assured Pacific Gulf in the separate proceedings, the actions of Defendants would have never come to the light.  Finally, as a Court sitting in admiralty, this Court is entitled to exercise its equitable discretion, which compels the tolling of the statute of limitations  due to Defendants tortious, conspiratorial, and wrongful conduct in this case.  *Vaughan v. Atkinson*, 369 U.S. 527, 530 (1962) ("equity is no stranger in admiralty; admiralty courts are, indeed, authorized to grant equitable relief.").

Plaintiff's causes of action for unjust enrichment and negligence are properly before the Court as any purported time bar must be tolled as a result of George and Efstathios Gourdomichalis' fraudulent concealment of its tortious actions.

## VI.     PLAINTIFF DID NOT VIOLATE THE OREGON PROTECTIVE ORDER

Plaintiff adopts its legal argument in its opposition motion to The American Club and SCB's motion to dismiss regarding Defendants' request for sanctions. *See* DE 33.  Defendants George and Efstathios Gourdomichalis have joined and adopted the legal arguments made by The American Club and SCB and provide no additional legal argument to support the request.  All exhibits accompanying the Complaint are necessary and relevant to the allegations against the Defendants and provide a timeline of important events, insurance coverage, and the wrongful cancellation of insurance coverage and abandonment of the Vessel. Defendants' request for the

sanction of dismissal of the Complaint, for attorney's fees, and request to enjoin Plaintiff should be denied in its entirety.

**VII.    DISCOVERY IS WARRANTED UNDER THE CIRCUMSTANCES OF THIS MATTER.**

Plaintiff adopts its request for discovery in its opposition motion to The American Club and SCB's motion to dismiss. *See* DE 33.  Defendants' legal arguments are premature and Plaintiff respectfully requests the opportunity to conduct discovery to supplement the Complaint and any legal challenges made by Defendants.

**VIII.    PLAINTIFF SEEKS LEAVE TO AMEND IF THE COURT FINDS THE COMPLAINT DEFICIENT IN ANY WAY.**

The Complaint satisfies the pleading requirements and has sufficiently set forth plausible grounds entitling Plaintiff to relief for the causes of action pled and properly invokes the subject matter jurisdiction of this Court and personal jurisdiction over the Defendants. DE 1.  Accordingly, Plaintiff did not amend its Complaint, as Defendants' motion to dismiss should be denied in its entirety.  Notwithstanding, should the Court identify any deficiencies, Plaintiff adopts its request for leave to amend in its opposition to The American Club and SCB's motion to dismiss under Fed. R. Civ. P. 15. *See* DE 33.

**IX.    LIMITED DISCOVERY SHOULD BE GRANTED IF THE COURT FINDS PERSONAL JURISDICTION HAS NOT BEEN SATISFIED.**

Should this Honorable Court finds that Plaintiff has not made a *prima facie* showing of personal jurisdiction, Plaintiff respectfully request that the parties engage in limited discovery. District courts have the discretion to allow a plaintiff to conduct limited discovery to determine the issue of personal jurisdiction.  *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981); *See e.g.*, *Pandeosingh v. Am. Med. Response, Inc.*, 2012 U.S. Dist. LEXIS 19187, at *14 (E.D.N.Y. Feb. 15, 2012) (granting limited discovery and finding that "where a plaintiff has failed

to make a prima facie showing, but has 'made a sufficient start toward establishing personal jurisdiction,' limited discovery may be appropriate.") (internal citation omitted); *Newbro v. Freed*, 2004 U.S. Dist. LEXIS 5358, at *10-16 (S.D.N.Y. 2004) (ordering the parties to conduct limited discovery for sixty (60) days and providing that "[d]iscovery will aid not only evaluating jurisdiction under the long arm statute, but also compliance with *International Shoe's* minimum contacts standard as well."); *Winston & Strawn v. Dong Won Secs. Co.*, 2002 U.S. Dist. LEXIS 20952, at *17 (S.D.N.Y. 2002) (granting plaintiff limited discovery for thirty (30) days for the parties to exchange document requests and take one deposition regarding how many contacts defendant had with the state of New York). Accordingly, limited discovery should be granted to allow the parties to conduct discovery pertaining to George and Efstathios Gourdomichalis' robust, systematic, continuous, and purposeful contacts with the state of New York.

## <u>CONCLUSION</u>

WHEREFORE, for the reasons more fully stated above, the factual allegations contained in Plaintiff's Complaint, and what may be added at oral argument, Plaintiff, respectfully request that this Court deny Defendants George and Efstathios Gourdomichalis' Motion to Dismiss in its entirety, and grant such other and further relief as justice may require.

Dated: February 14, 2020
      Oyster Bay, New York

Respectfully submitted,

Chalos & Co, P.C.

By:   /s/ Briton P. Sparkman
     George M. Chalos, Esq.
     Briton P. Sparkman, Esq.
     55 Hamilton Avenue
     Oyster Bay, New York 11771
     Tel: 516-714-4300
     Fax: 516-750-9051
     Email: gmc@chaloslaw.com
          bsparkman@chaloslaw.com