

1271 Avenue of the Americas
New York, NY 10020
blankrome.com

*Phone:* (212) 885-5152
*Fax:* (917) 332-3858
*Email:* WBennett@BlankRome.com

June 16, 2020

**BY ECF**

Hon. Ronnie Abrams
United States District Court, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 1506
New York, New York 10007

      Re:    Great Lakes Insurance SE v. American Steamship Owners Mutual Protection and Indemnity Association Inc., *et al*.
              Case No.: 1:19-cv-10656-RA-SLC

Dear Judge Abrams:

We represent Defendants George Gourdomichalis and Efstathios Gourdomichalis, pursuant to their limited appearances, in the above-referenced action. We submit this letter brief in response to the Court's Order asking the parties to address whether Plaintiff has satisfied the two-part test for admiralty tort jurisdiction in this action. (ECF 53). As set forth herein, and in George and Efstathios Gourdomichalis's Motion to Dismiss (ECF 31), the Complaint does not give rise to admiralty jurisdiction and the action should be dismissed.

## LEGAL ANALYSIS

The Supreme Court developed a two-pronged test to determine whether a tort falls within the scope of federal admiralty jurisdiction. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). The first prong examines the locality of the injury. A tort satisfies the locality requirement if it "occurred on navigable waters" or if the "injury suffered on land was caused by a vessel on navigable water." *Grubart*, 513 U.S. at 534. The second prong considers the connection between the tort and traditional maritime activity. First, a court must assess the general



features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce. Second, a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id.* (*quoting Sisson v. Ruby*, 497 U.S. 358, 364 (1990)). Federal admiralty jurisdiction is only proper when the location test and both prongs of the connection test are satisfied. *Id.* Here, Plaintiff's claims for prima facie tort, promissory fraud, civil conspiracy, unjust enrichment and negligence do not give rise to maritime jurisdiction under 28 U.S.C. § 1333 since neither the location nor the connection tests are met.

### A. Plaintiff's Injuries Did Not Occur on Navigable Waters

The record clearly establishes the alleged tortious conduct which underlies Plaintiff's claims does not satisfy the location test. The alleged "conspiracy" to frustrate a subrogated cargo underwriter's effort to recover a loss did not happen on navigable waters, but at offices in Greece and in New York. *See, e.g.*, Compl. ¶¶ 89-92; 98-99; 150-153; 156-158; 161-162; 165-166. And, the direct effects of that conduct—Plaintiff's alleged inability to recover the amount paid to resolve Marubeni's claim—also occurred entirely on land. *See, e.g.*, Compl. ¶¶ 154; 159; 163; 167. Because the alleged tortious conduct fails to satisfy the location test, the Court need not reach the connection inquiry. To the extent it does, Plaintiff does not satisfy either prong of the connection test.

### B. Plaintiff's Claim is Not Related to Traditional Maritime Activities Sufficient to Potentially Disrupt Maritime Commence

In determining whether admiralty tort jurisdiction exists, courts "must assess the general features of the type of incident involved to determine whether the incident has a potentially

2


disruptive impact on maritime commerce . . . [and] determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 247 (2d Cir. 2014) (*citing Grubart*, 513 U.S. at 534). An alleged "conspiracy" to frustrate a subrogated cargo underwriter's effort to recover a loss does not present the potential impact to traditional maritime activity nor does it have a substantial relationship to traditional maritime activity sufficient to bring this case within the court's admiralty jurisdiction.

1. **Plaintiff's Claim Has No Effect on Maritime Commerce**

The first prong of the connection test analyzes whether "the general features of the type of incident involved" have "a potentially disruptive impact on maritime commerce." *Id*. (*citing Sisson*, 497 U.S. at 363, 364 n.2). This analysis requires the Court to assess the "potential" disruptive effects that the type of incident involved could have on maritime commerce, not whether the particular incident at hand actually disrupted maritime commerce. *Id*. at 538-39. In so doing, the Court must describe the incident "at an intermediate level of possible generality." *Id*. at 538. The purpose of this exercise is to ascertain "whether the incident could be seen within a class of incidents that posed more than a fanciful risk to commercial shipping." *Id*. at 539.

Several cases illustrate the proper analysis. In *Grubart*, a construction company that was using a crane on a barge in the Chicago River allegedly cracked a freight tunnel running under the river, causing water to pour into the tunnel and flood buildings downtown. 513 U.S. at 530. The Supreme Court described that incident as "damage by a vessel in navigable water to an underwater structure," and concluded that this type of incident has the potential to disrupt maritime commerce



because it "could lead to a disruption in the water course itself" or "could lead to restrictions on the navigational use of the waterway during required repairs." *Id*. at 539.

In *Sisson*, a fire broke out on a recreational vessel that was docked at a marina, destroying that vessel and damaging several recreational vessels nearby and the marina. 497 U.S. at 360. The Supreme Court described the incident as "a fire on a vessel docked at a marina on navigable waters," and concluded that this type of incident has the potential to disrupt maritime commerce because the fire could have spread to a nearby commercial vessel or made the marina inaccessible for commercial vessels. *Sisson*, at 362-63; *see In re Petition of Germain*, 824 F.3d 258, 261 (2d Cir. 2016) (describing the incident as a recreational injury occurring on a recreational vessel anchored in a shallow recreational bay of navigable waters).

In contrast, in *Tandon*, the Second Circuit described the incident as "a physical altercation among recreational visitors on and around a permanent dock surrounded by navigable water." *Id*. at 249. The Court explained that, unlike *Grubart*, this type of incident cannot disrupt navigation because "it does not create any obstruction to the free passage of commercial ships along navigable waterways. Nor can it lead to a disruption in the course of the waterway itself." *Id.* Further, the Court noted that, unlike *Sisson*, this incident "cannot immediately damage nearby commercial vessels" and "threatens only its participants." *Id*. Moreover, the Court found that because the incident did not occur while the parties were at sea, the incident could not "distract the crew from their duties, endangering the safety of the vessel and risking collision with others on the same waterway" or force the vessel "to divert from its course to obtain medical care for the injured person." *Id*. at 250. Finally, the Court noted that the injured individual was not "employed in maritime commerce." *Id*. Accordingly, the Second Circuit concluded that "this type of incident

BLANKROME

1271 Avenue of the Americas
New York, NY 10020
blankrome.com

does not realistically pose a threat to maritime commerce." *Id.* at 249. Here, unlike *Grubart*, *Sisson*, and *Germain*, the alleged "conspiracy" involves a failure to pay a subrogated insurance claim, occurred entirely on land, and has no effect on maritime commerce. Plaintiff's claims do not satisfy the first prong of the two-prong connection test, rendering the invocation of federal admiralty jurisdiction inappropriate.

### 2. Plaintiff's Claim Has No Substantial Relationship to Maritime Activity

Applying the second factor, the Supreme Court focused on whether the general character of the activity giving rise to the incident reveals a substantial relationship to traditional maritime activity. "[T]he relevant 'activity' is defined not by the particular circumstances of the incident, but by the general conduct from which the incident arose." *In re Germain*, 824 F.3d at 267 (*citing Grubart*, 513 U.S. at 364). The general character giving rise to the incident here–Plaintiff's alleged inability to recover for the amount paid to resolve Marubeni's claim—occurred entirely on land and has, at best, a tenuous connection with navigable waters. *See, e.g.*, Compl. ¶¶ 154; 159; 163; 167. Plaintiff has not—and cannot—meet its burden on the second element.

We thank the Court in advance for its consideration.

Respectfully submitted,

Blank Rome LLP

*/s/ William R. Bennett*

William R. Bennett, III
Lauren B. Wilgus

cc: Counsel of Record (via ECF)