# BROWN GAVALAS & FROMM LLP

505 FIFTH AVENUE
NEW YORK, NEW YORK 10017
TEL: (212) 983-8500
FAX: (212) 983-5946
www.browngavalas.com
bgmail@browngavalas.com

NEW JERSEY OFFICE
───────
1118 CLIFTON AVENUE
CLIFTON, NJ 07013
TEL: (973) 779-1116
FAX: (973) 779-0739

HARRY A. GAVALAS
(1978-1999)
ROBERT J. SEMINARA
(1987-1999)

June 16, 2020

**VIA ECF**

The Honorable Ronnie Abrams
United States District Judge
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 2203
New York, NY 10007

      Re:    *Great Lakes Insurance SE v. American Steamship Owners Mutual Protection and Indemnity Association Inc., et al.*
              Case No.: 1:19-cv-10656-RA-SLC
              Our File: 1545.0083

Dear Judge Abrams:

      We are counsel for Defendants, American Steamship Owners Mutual Protection & Indemnity Association, Inc. (the "Association") and Shipowners Claims Bureau, Inc. ("SCB," collectively with the Association the "American Club"), in the above-referenced action. We write with respect to Your Honor's June 9, 2020 Order [Dkt. 53] concerning the Court's subject matter jurisdiction over this matter.

      In order for the Court to have subject matter jurisdiction over Plaintiff's five (5) alleged tort based causes of action, the allegations of Plaintiff's Complaint must satisfy the two-part test for admiralty tort jurisdiction as set forth by the Supreme Court of the United States in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995). The first part of the test is whether the alleged tort satisfies the location test, which is whether the alleged tort occurred on navigable waters or was caused by a vessel on navigable waters. 513 U.S. at 534. The second part of the test is the connection test, which contains two subparts. The first subpart of the connection test is whether the general type of incident involved has a potentially disruptive effect on maritime commerce. *Id.* The second subpart of the connection test is whether the general character

of the activity giving rise to the incident bears a substantial relationship to traditional maritime activity. *Id.* The location test as well as both subparts of the connection test must be satisfied in order for there to be admiralty tort jurisdiction under 28 U.S.C. § 1333(1). *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 248 (2d Cir. 2014).

Here, Plaintiff asserts claims for (i) *prima facie* tort, (ii) promissory estoppel, (iii) civil conspiracy, (iv) unjust enrichment, and (v) negligence, which are not traditional maritime claims subject to federal maritime law. Instead, Plaintiff's claims are all state common law tort claims subject to state law that do not satisfy the location test or either subpart of the connection test. Consequently, the Court lacks admiralty subject matter jurisdiction over this matter.[1]

### 1. The Location Test Is Not Satisfied

Plaintiff's alleged tort claims do not satisfy the location test. The alleged tortious conduct that is the basis of all of Plaintiff's claims is that the defendants conspired to abandon the M/V ADAMASTOS and to terminate the insurance coverage for the M/V ADAMASTOS.[2] However, the alleged conspiracy to abandon the M/V ADAMASTOS and to terminate the insurance coverage for the M/V ADAMASTOS neither occurred on navigable waters nor was caused by a vessel on navigable waters. Instead, these alleged tortious acts occurred on land.

In particular, Plaintiff alleges that on January 7, 2015, Phoenix Shipping submitted a letter to the Greek government to inform the government that Phoenix Shipping ceased the operation and management of the M/V ADAMASTOS. [Dkt. 1 (Compl.) ¶ 89] This letter would have been sent from Phoenix Shipping's offices in Piraeus, Greece to the Greek government, which clearly is not an activity taking place on navigable waters. [*Id.* ¶ 33] Plaintiff also alleges that Phoenix Shipping, at the direction of George and/or Stathis Gourdomichalis, "provided notice through an email from Phoenix Shipping to The American Club that the management services contracted by their closely held owning company had been unilaterally terminated by Phoenix Shipping." [*Id.* ¶ 91] Here, too, sending of an email from Phoenix Shipping's offices in Piraeus, Greece to the American Club's offices in New York is not an activity taking place on navigable waters. Finally, Plaintiff alleges that on January 8, 2015, the

---

[1] Diversity jurisdiction under 28 U.S.C. § 1332 also does not exist and is not alleged by Plaintiff. In this matter, there is no diversity as Plaintiff is a foreign entity organized under the laws of Germany, while George and Efstathios Gourdomichalis are Greek citizens and residents and the American Club is a New York entity. [Dkt. 1 ¶¶ 5; 7-8; 10-11]; *Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012) (diversity is lacking where on one side there are citizens and aliens and on the opposite side there are only aliens).

[2] The American Club denies all alleged tortious conduct and alleged wrongdoing set forth in Plaintiff's Complaint.

American Club issued a notice to Adamastos Shipping terminating the P&I and FD&D insurance coverages for the M/V ADAMASTOS due to the change in management. [*Id.* ¶ 92] This alleged wrongful notice was issued from the American Club's offices in New York, and is clearly not an activity taking place on navigable waters. [*Id.* Ex. 6]

Plaintiff further alleges that "[r]ather than take any steps to enforce The American Club's rights under the Certificate of Entry, Club Rules, and By-Laws, The American Club, SCB, George Gourdomichalis, and Stathis Gourdomichalis confederated, conspired, and/or agreed to develop an exit strategy which centered on the abandonment of the M/V ADAMASTOS by her owners and insurers in Brazil to avoid paying a large uncollectable GA claim and/or a large cargo claim." [*Id.* ¶ 98] This alleged "exit strategy" would have been developed in offices in Greece and/or New York and not on navigable waters. Plaintiff also alleges that "[t]he Defendants purposefully cancelled the P&I Coverage for the M/V ADAMASTOS despite the existence of a significant and covered claim…." [*Id.* ¶ 156] This alleged wrongful cancellation would also have occurred at the American Club's New York offices and not on navigable waters. Plainly, the alleged tortious conduct underlying all of Plaintiff's causes of action—that defendants conspired to abandon the M/V ADAMASTOS and to terminate the insurance coverage for the M/V ADAMASTOS—did not occur on navigable waters and was not caused by a vessel on navigable waters.

The United States Court of Appeals for the Eleventh Circuit in *Broughton v. Fla. Int'l Underwriters*, 139 F.3d 861 (11th Cir. 1998) examined analogous facts in holding that the plaintiff vessel owner did not invoke maritime jurisdiction in a tort claim against a surplus line insurance broker for, *inter alia*, beaching its duty to inform the plaintiff that his insurance company was financially unsound. 139 F.3d at 862-63, 865. In *Broughton*, the plaintiff's vessel capsized and was destroyed. *Id.* at 862. The plaintiff was unable to recover the loss of his vessel under the insurance policy procured by the defendant insurance broker because the insurance company that issued the policy was in liquidation. As a result, the plaintiff sued the insurance broker in tort for its failure to ensure the financial soundness of an insurer before placing insurance with such insurer and for its failure to notify the plaintiff, as the insured, that the insurer was financially unsound. *Id.* The Eleventh Circuit found that the location test for maritime jurisdiction under *Grubart* was not satisfied because the "tort did not occur on navigable water; nor is this a case where an injury on land was caused by a vessel on navigable water." *Id.* at 865. Likewise, the tort-based claims alleged in Plaintiff's Complaint here, do not satisfy the location test as the alleged tortuous conduct in the instant case did not occur on navigable water and Plaintiff's alleged injury was not caused by a vessel on navigable waters.

As the location test is not satisfied in this case, there can be no admiralty tort jurisdiction over this matter because <u>both</u> the location test and the connection test, including the latter's subparts, must be satisfied in order for there to be admiralty tort jurisdiction.

### 2. The Connection Test is Not Satisfied

Historically, the test for admiralty tort jurisdiction was only the location test. *Grubart*, 513 U.S. at 531-32. However, over time, the test evolved and additional factors were added that were intended to limit and not expand the Court's admiralty tort jurisdiction. *See, e.g., Isla Nena Air Servs. v. Cessna Aircraft Co.,* 380 F. Supp. 2d 74, 77 (D.P.R. August 9, 2005) (noting that a trio of cases from the Supreme Court of the United States expanded on the requirements for admiralty tort jurisdiction, which concluded with *Grubart).* The connection test, and its two subparts, is now an integral part of the jurisdictional test and is relevant only if the location test is satisfied.

Plaintiff's tort based claims fail to satisfy either subpart of the connection test.

#### i. *General Type of Incident Involved*

The first part of the connection test requires a general description of the incident and if that general description has a potential disruptive impact on maritime commerce. *Grubart*, 513 U.S. at 533. The description should be general enough to capture the possible effects of similar incidents on maritime commerce, but specific enough to exclude irrelevant cases, taking into account the general location where the incident occurred. *Tandon,* 752 F.3d 239 at 249. The overall purpose of this analysis is to determine whether the incident could be seen within a class of incidents that pose more than a "fanciful" risk to commercial shipping. *Id. at* 249-251.

Here, the incident involved in this case is best described as an alleged conspiracy to avoid paying a cargo claim of a subrogated insurance company. The likelihood that similar incidents would have a significant impact on maritime commerce is non-existent. As noted above, the alleged tortious activity involved in this alleged conspiracy—to avoid paying a cargo claim of a subrogated insurance company—did not even take place on navigable water, but allegedly took place on land in offices in Greece and New York. Thus, the first part of the connection test is not satisfied.

#### ii. *General Character of the Activity*

The second part of the connection test looks to whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. Courts inquire into whether "a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand." *Germain v. Ficarra (In re Germain)*, 824 F.3d 258, 268 (2d Cir. 2016) (quoting *Grubart*, 513 U.S. at 539-40).

   In this case, the general character of Plaintiff's claims are land-based torts based upon an alleged conspiracy to avoid paying a cargo claim of a subrogated insurance company. Clearly, conspiracies are not a traditional maritime activity. In fact, the five causes of action set forth in Plaintiff's Complaint for (i) *prima facie* tort, (ii) promissory estoppel, (iii) civil conspiracy, (iv) unjust enrichment, and (v) negligence are not traditional maritime claims subject to federal maritime law, but instead are all state based tort claims subject to state law. Thus, the second part of the connection test is not satisfied.

   Based upon the foregoing, Plaintiff's claims do not satisfy the two-part test in order for there to be admiralty tort subject matter jurisdiction over this matter.

           Respectfully submitted,

           BROWN GAVALAS & FROMM LLP

           Robert J. Brown

cc:  Counsel of Record (via ECF)